UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                   :

UNITED STATES OF AMERICA
                                                   :

      - v. -                                                       S1 22 Cr. 395 (ER)

                                                   :

BRIAN WONG,
                                                 :

         Defendant.
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## THE GOVERNMENT'S SENTENCING SUBMISSION

                                              DAMIAN WILLIAMS
                                              United States Attorney
                                              Southern District of New York
                                              One St. Andrew's Plaza
                                              New York, New York 10007

Negar Tekeei
Nicolas Roos
Kiersten Fletcher
Assistant United States Attorneys
- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
STATEMENT OF FACTS AND PROCEDURAL HISTORY....................................................... 1
    A. Offense Conduct…………………………………………………………………………..1
    B. Procedural History…………………………..…………………………………………….3
    C. Presentence Investigation Report………………………………………………………….4
APPLICABLE LAW………………………………………………………………………...……5
DISCUSSION .................................................................................................................................. 6
    A. The Need to Reflect the Seriousness of the Offense and Promote Respect for the Law.…6
    B. The Need to Provide Just Punishment for the Offense…………………………………….7
    C. The Need to Afford Adequate Deterrence……………………………………………...…9
    D. The Defendant's Section 3553(a) Arguments Do Not Warrant a
        Non-Custodial Sentence……………………………………………………………….11
CONCLUSION............................................................................................................................. 13

## PRELIMINARY STATEMENT

The Government respectfully submits this sentencing memorandum in advance of the sentencing of Brian Wong ("Wong" or the "defendant") scheduled for April 12, 2023.

Wong was a full-time bank employee who owned and managed properties valued at more than $2 million when he chose to destroy evidence of his communications with his brother about illegal insider trading, obtained more than $400,000 in profits from his own trading based on information provided by his brother, and, later, made multiple false and misleading statements to law enforcement about, among other things, the illegal insider trading scheme through which his brother and another individual together made more than $1.4 million in illicit profits.

Accordingly, and for the reasons set forth below, the Court should impose a sentence within the agreed-upon United States Sentencing Guidelines range of 12 to 18 months' imprisonment. Such a sentence would be sufficient but not greater than necessary to serve the legitimate ends of sentencing.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Offense Conduct

In early 2021, Seth Markin and Brandon Wong, the defendant's brother, together made more than $1.4 million in illegal profits by trading in stock based on inside information that Markin stole from his then-girlfriend, who was at the time an attorney at a major law firm in Washington D.C. (the "Law Firm Associate"). PSR ¶ 8.[1] In February 2021, Markin secretly looked through the Law Firm Associate's confidential work documents, without her permission, and learned that,

---

[1] "PSR" refers to the final Presentence Investigation Report, filed by the United States Probation Department on March 1, 2023; "Dkt. [Number]" refers to a docket entry in this case; "Information" refers to the S1 Information in this case (Dkt. 28). Unless otherwise noted, case text quotations omit all internal quotation marks, citations, and previous alterations.

in a matter of weeks, Merck & Co. ("Merck"), a publicly traded pharmaceutical company, was going to acquire Pandion Therapeutics ("Pandion"), a publicly traded biotechnology company, for approximately three times the value of Pandion's share price. *Id.*

Brandon Wong purchased hundreds of thousands of dollars' worth of Pandion shares based on the material non-public information he received from Seth Markin. PSR ¶ 9. In addition to his purchases of Pandion stock, Brandon Wong told at least seven other people to purchase Pandion shares, causing some of the people he tipped to purchase tens or hundreds of thousands of dollars' worth of Pandion stock, including his brother, the defendant. *Id.*

In or about February 2021, Brandon Wong told his brother, the defendant, to purchase Pandion shares in a series of phone calls and text messages (the "Text Messages") based on, among other things, the fact that Pandion was going to make an "announcement" that was not "public info" but was "big news," and that the share price was going to "🚀" upward. PSR ¶ 9. The defendant, a bank employee who tried to hide his trading activity by using brokerage accounts opened in his name of his domestic partner, then purchased thousands of shares of Pandion, and also told several of his friends to purchase Pandion shares. *See id.*

After Merck's acquisition of Pandion was announced publicly, and the defendant's Pandion stockholdings significantly increased in value, the defendant sold his shares of Pandion for more than $400,000 in profits. PSR ¶ 11. The defendant also deleted certain of the Text Messages between himself and his brother, Brandon Wong. *Id.*

In or about November 2021, Special Agents from the Federal Bureau of Investigation interviewed the defendant at his home in New Jersey in connection with an investigation they told him was being conducted by law enforcement in the Southern District of New York relating to insider trading in Pandion stock. PSR ¶ 12. During the interview, Wong falsely told the agents

2

(i) that he was not familiar with Pandion; (ii) that he learned about Pandion in online forums including wallstreetbets; (iii) that his brother, Brandon Wong, did not tell him anything about Pandion; and (iv) that Wong did not discuss Pandion with anyone else. *Id.*

During the time period of his offense conduct, the defendant was employed full-time as a lead desktop publisher at a bank, earning an annual salary and bonus, and owned multiple residences, including his own home, collectively worth more than $2 million. *See* PSR ¶ 56, 60.

**B. Procedural History**

On November 10, 2022, the defendant pled guilty, pursuant to a plea agreement (the "Plea Agreement"), to Count One of the Information, and admitted that, knowing that an offense against the United States had been committed, namely, the conspiracy to commit securities fraud and tender offer fraud charged in Count One of the Indictment captioned *United States v. Markin and Wong*, 22 Cr. 395 (ER), he knowingly received, relieved, comforted, and assisted the offenders in order to hinder and prevent the offenders' apprehension, trial, and punishment, in violation of 18 U.S.C. § 3. PSR ¶¶ 3, 4. At the plea proceeding, the defendant stated the following:

> Between approximately February 2021 and September 2022, knowing that a crime against the United States had been committed, I deleted text messages related to securities trades made by my brother, Brandon Wong, who lives and received those text messages in Manhattan, and made statements to law enforcement which I knew were false or misleading related to those securities trades made by Brandon Wong while he was physically present in Manhattan, and knew that these actions would help my brother avoid getting caught and punished for the crimes he committed.

Dkt. 39 at 23. The defendant also acknowledged that, when he committed these crimes, no one had threatened or forced him to do so.

The same day, November 10, 2022, the United States Securities and Exchange Commission ("SEC") filed civil insider trading charges against the defendant for trading on inside information

3

tipped to him by his brother, Brandon Wong. *See SEC v. Brian Wong*, 22 Cv. 9618 (JHR). The SEC previously charged Brandon Wong and his source, Seth Markin, with insider trading on July 25, 2022. *See SEC v. Markin and Wong*, 22 Cv. 6276 (JHR). The defendant consented to the entry of injunctive relief and monetary penalties in the SEC case. *See SEC v. Brian Wong*, 22 Cv. 9618 (JHR), Dkt. 10.

### C. Presentence Investigation Report

The Probation Office, consistent with the Plea Agreement, concludes that Wong has a total Guidelines offense level of 13, calculated as follows:

1. The applicable Guidelines manual is the November 1, 2021 edition.

2. Pursuant to U.S.S.G. § 2X3.1 the applicable Guideline for Count One is calculated using the Guideline for the underlying offense. The underlying offense is a conspiracy involving the defendant's brother to commit securities fraud (insider trading) and tender offer fraud, which is governed by U.S.S.G. §§ 2X1.1 and 2B1.4.

3. Pursuant to U.S.S.G. §§ 2B1.4 and 2X1.1.(b)(2), the base offense level for the underlying offense is eight, because the substantive offense was completed.

4. Pursuant to U.S.S.G. §§ 2B1.4(b)(1) and 2B1.1(b)(1)(H), because the gain resulting from the underlying offense, insider trading by the defendant's brother, was more than $550,000 but less than $1,500,000, 14 levels are added.

5. The offense level for the underlying offense governed by U.S.S.G. § 2B1.4(b)(1) is therefore 22.

6. Pursuant to U.S.S.G. § 2X3.1(a)(1), the base offense level is six levels lower than the offense level for the underlying offense. Accordingly, the base offense level is 16.

7. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has

> accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

PSR ¶¶ 18-28. Because Wong has no criminal history, he is in Criminal History Category I. Based on a total offense level of 13 and a Criminal History Category of I, Wong's Guidelines range of imprisonment, consistent with the Stipulated Guidelines Range in the Plea Agreement, is 12 to 18 months' imprisonment. PSR ¶ 68.

The Probation Office recommends a sentence of three months' imprisonment, to be followed by one year of supervised release. PSR at 20-21. In making its recommendation the Probation Office relays that the defendant stated that "monetary gain was a motivating factor for committing the instant offense," as well as his belief that he was helping his brother stay out of trouble. PSR at 21. The Probation Office also considered that the defendant "significantly profited from the trades, attempted to destroy and conceal evidence, and provided false statements to [law] enforcement," knowing that he was engaged illegal conduct. *Id.*

## APPLICABLE LAW

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005). Along with the Guidelines, the other factors set forth in Title 18, United States Code, Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

5

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

## DISCUSSION

As discussed below, the Government respectfully submits that after applying the sentencing factors set forth in Section 3553(a) to the defendant's conduct, a Guidelines sentence is warranted in this case.

### A. The Need to Reflect the Seriousness of the Offense and Promote Respect for the Law

The defendant, knowing that his brother had committed a crime, took steps to cover up his own knowledge of and involvement in Pandion trades, and the illegal insider trading scheme perpetrated by his brother and Seth Markin. The defendant reaped more than $400,000 in profits from his own Pandion trades and encouraged others to also trade in Pandion, and his brother gained more than $1.35 million from illegal trades. The defendant not only actively deleted communications between himself and his brother, but he also made several false statements to FBI agents during an interview in November 2021. The defendant lied about his knowledge of Pandion

and then, when confronted, lied about how he learned about Pandion. The defendant also explicitly lied about being told about Pandion by his brother, and then lied about discussing Pandion with others. The defendant chose to lie to protect himself and his illicit trading gains, and to thwart the criminal investigation into his brother's illegal activity. A Guidelines sentence is necessary to reflect the seriousness of the defendant's offense and to promote respect for the law.

The defendant did not commit these crimes out of any financial need. He was far more financially stable than countless defendants who commit crimes and who are, at least in part, motivated by financial instability. Wong had a well-compensating, full-time job, and owned more than $2 millions in real estate in New Jersey, Pennsylvania, and Florida, some of which he managed as rental properties for additional income. In lying about his Pandion trades and those of others, and then working to conceal his brother's crimes by deleting evidence and lying to FBI agents, the defendant's motivations were clear: greed and self-protection. The sentence imposed needs to be significant enough to send the message that the defendant's conduct will not be tolerated.

### B. The Need to Provide Just Punishment for the Offense

The need to provide just punishment for the offense also militates in favor of a Guidelines sentence in this case. The defendant's lies and efforts to conceal his brother's crimes were serious. Insider trading is a serious crime. A fundamental purpose of the securities laws is to outlaw deceptive practices in the securities markets. Insider trading undermines the public's confidence in the capital markets and deters ordinary investors from investing in those markets because of the perception that they are rigged by well-connected individuals who are willing to provide an unfair

informational advantage to their associates, or in this case to their family members.[2]  In disregard for the law and the seriousness of his brother's crimes, the defendant chose to conceal evidence of those crimes and actively lie to FBI agents to help his brother get away with insider trading.  The defendant's lies to law enforcement agents about illegal trading in Pandion provide a powerful reason to impose a sentence that carries a period of incarceration within the Guidelines range.  *See United States v. Mui*, 214 F. App'x 40, at *5 (2d Cir. Jan. 18, 2007) (approving district court's consideration of defendant's obstruction of investigation under Section 3553(a) and consequent imposition of higher sentence); *United States v. Vogler*, 763 F. App'x 18, at *19-20 (2d Cir. Feb. 26, 2019) (same); *United States v. Butters*, 588 F. App'x 12, at *13 (2d Cir. Dec. 11, 2014) (approving district court's consideration of defendant's false statements to law enforcement officials as evidence of his dishonesty which the district court viewed as discounting his after-the-fact statements of remorse).  In Wong's statement to FBI agents, he provided a false narrative that was calculated to fool law enforcement agents and insulate him and his brother from facing any consequences for their criminal behavior.  For this reason, Wong's argument that he should receive a non-custodial, below-Guidelines sentence because the Guidelines are unduly driven by the amount of his brother's gain is unpersuasive.  This is not a case where, as to Wong, an exorbitant amount of gain has generated a draconian Guidelines range.  Wong's Guidelines range of 12 to 18

---

[2] *See* Insider Trading and Securities Fraud Enforcement Act of 1988, H.R. Rep. No. 100-910, at 7-8 (1988), reprinted in 1988 U.S.C.C.A.N. 6043, 6044, ("Insider trading damages the legitimacy of the capital market and diminishes the public's faith . . . . [T]he small investor will be—and has been—reluctant to invest in the market if he feels it is rigged against him."); H.R. Rep. No. 98-355, at 5 (1983) (emphasizing that "[t]he abuse of informational advantages that other investors cannot hope to overcome through their own efforts is unfair and inconsistent with the investing public's legitimate expectation of honest and fair securities markets where all participants play by the same rules"); Arthur Levitt, A Question of Integrity: Promoting Investor Confidence by Fighting Insider Trading, in Vital Speeches of the Day, Vol. LXIV, 354, 355 (Apr. 1, 1998) ("The American people see it, bluntly, as a form of cheating.").

months' imprisonment is appropriate for the crime he committed: attempting to hinder the criminal investigation into his brother and avoid prosecution and punishment. A Guidelines sentence is appropriate here.

### C. The Need to Afford Adequate Deterrence

The need to afford adequate deterrence likewise weighs heavily in favor of a Guidelines sentence here. The legislative history of Section 3553 demonstrates that "Congress viewed deterrence as 'particularly important in the area of white collar crime.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 382, 3259); *see also United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expedited benefits of a crime and hence the punishment required to deter it."); *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). The Second Circuit and courts in this district have noted the appropriateness of significant sentences in the context of financial crimes, including specifically insider trading, committed by defendants who make the calculation that white collar crime is "a game worth playing." *United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013) (quoting district court and affirming sentence of 66 months' imprisonment for insider trading offense); *United States v. Gupta*, 904 F. Supp. 2d 349, 355 (S.D.N.Y. 2012) ("As this Court has repeatedly noted in other cases, insider trading is an easy crime to commit but a difficult crime to catch. Others similarly situated to the defendant must therefore be made to understand that when you get caught, you will go to jail."). As the *Martin* Court noted: "Congress was especially concerned that prior to the Sentencing Guidelines, [m]ajor white collar criminals often [were] sentenced to small fines

9

and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." *Martin*, 455 F.3d at 1240; *see also id.* ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.").

The need for the sentence imposed to further general deterrence is acute here, particularly where the Guidelines range is already relatively modest. The specifics of Wong's conduct highlight the consequences of insider trading crimes and the importance of dissuading potential offenders from engaging in insider trading and lying to conceal the crimes of their family members. Particularly given Wong's efforts to conceal his brother's crimes, Wong's sentence must be significant enough to achieve general deterrence in light of the difficulty of detecting and proving illegal insider trading. *See Gupta*, 904 F. Supp. 2d at 355 (noting that because insider trading is a difficult crime to detect, putative offenders must be made to understand that there are serious consequences to getting caught). Without a significant sentence attached to the crime of covering up a family member's insider trading, the relative simplicity of committing that crime and the underlying offense and the challenge of detecting that conduct would incentivize insiders similarly situated to the defendant and his brother to engage in similar offenses.

The sentence imposed must also be fashioned to deter the deception of law enforcement agents and send the message that lying to federal law enforcement agents in an attempt to obstruct their efforts to discover the truth is a serious crime. The manner in which Wong destroyed evidence and then lied to the FBI in this case suggests that at least he did not view these as particularly weighty steps to take. He deleted multiple text messages over several days of communications with Brandon Wong, and he told not just one lie during his interview but several.

10

It is critical that the sentence imposed on Wong not send the message that choosing to destroy evidence and provide a false narrative to law enforcement agents about criminal conduct will be punished no more severely than remaining silent, or that lying and obstruction is implicitly expected or accepted as part and parcel of the initial offense. The result of that message would be that individuals who have committed crimes and are approached about their conduct or the conduct of their friends and family members would believe that they might as well seek to cover it up through lies. Destroying evidence and throwing obstacles in the way of law enforcement agents is wholly distinct from the crime those obstacles are intended to obscure. The sentence imposed should reflect that distinction.

### D. The Defendant's Section 3553(a) Arguments Do Not Warrant a Non-Custodial Sentence

Wong argues that his early acceptance of responsibility, the need to avoid unwarranted sentencing disparities, and his personal history and characteristics counsel in favor of a sentence of one year of probation and community service. But these arguments do not support a non-custodial sentence.

*First*, the Government, of course, recognizes that, after being told he would be charged with federal crimes, the defendant chose to accept responsibility for his actions, enter a plea of guilty, and forfeit the gains he made from his Pandion trades prior to being charged by a grand jury. A sentence within the Guidelines range of 12 to 18 months' imprisonment can reflect those actions.

*Second*, "[a]lthough the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct is a factor district courts must consider under 18 U.S.C. § 3553(a)(6) when imposing a sentence, that provision does not require a district court to conform its sentence to any single other sentence adduced by a defendant."

11

*United States v. Sampson*, 898 F.3d 287, 314 (2d Cir. 2018) (citing *United States v. Halloran*, 821 F.3d 321, 341 (2d Cir. 2016).  No two cases are alike, and no two defendants are alike.  The cases cited by Wong are informative, but they are not controlling.  Numerous courts have sentenced defendants to terms of imprisonment for obstruction, false statements, and other similar offenses.  *See, e.g.*, *United States v. Sylvia Ash*, 19 Cr. 780 (LAK), Dkt. 180 (defendant was convicted of one count of conspiracy to obstruct justice (18 U.S.C. § 371), one count of obstruction of justice (18 U.S.C. § 1512(c)), and one count of false statements (18 U.S.C. § 1001), based on conduct in relation to a federal investigation into corruption and embezzlement at Municipal Credit Union, and sentenced to 15 months' imprisonment (concurrent) on each count); *United States v. Albert Baldeo*, 13 Cr. 125 (PAC), Dkt. 153 (defendant was convicted of several counts of witness tampering, in connection with seeking to cover up a fraud, while being acquitted of having committed the fraud, and sentenced to 18 months' imprisonment); *United States v. Mena*, 361 F. App'x 242, 243 (2d Cir. 2010) (defendant sentenced to three months' imprisonment following his plea of guilty to accessory after the fact for his conduct in assisting a business acquaintance in defrauding the United States Small Business Administration).

*Third*, the Court should also reject Wong's suggestion that his conduct was aberrational.  Dkt. 62 at 10.  The conduct at issue was not a one-time mistake.  It consisted of, among other things, a series of deletions of text messages over the course of Wong and his brother's weeks-long communications about their Pandion trades, and, months later, multiple lies to FBI agents when they confronted Wong with his actions and his brother's illegal insider trading.

*Finally*, with respect to Wong's personal history and characteristics, Wong has long had the support of his family and friends.  The affection and support they share for him is admirable.  But, in this regard, Wong stands in stark contrast to scores of other defendants who commit crimes

12

against a backdrop of devastating financial hardship, abuse, or other exceptionally difficult life circumstances. Wong's continued commitment to his family demonstrates that Wong hopes to put his criminal conduct behind him. However, Wong's personal history and circumstances, and the letters of support he submits, do not mitigate the nature and seriousness of his criminal conduct, and they do not obviate the need for a sentence of incarceration that would serve as just punishment and afford adequate deterrence to criminal conduct.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the applicable Guidelines range of 12 to 18 months' imprisonment would be reasonable and just in this case.

Dated: New York, New York
April 5, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s_____
Negar Tekeei
Nicolas Roos
Kiersten Fletcher
Assistant United States Attorneys